**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Randolph L. Chambers


     v.                                   Civil No. 04-cv-397-JD

Warden, New Hampshire State Prison


**REPORT AND RECOMMENDATION**


Plaintiff Randolph L. Chambers is an inmate housed in the Close Custody Unit ("CCU") at the New Hampshire State Prison for Men ("NHSP"). In this lawsuit, he claims that the Defendant, Warden of the NHSP, is unlawfully denying him his constitutional right of access to the courts. Plaintiff has filed a motion for an injunction and damages (document no. 5).

This matter was referred to me to review and to prepare a report and recommendation. The Defendant filed an objection. The Court held an evidentiary hearing on May 4, 2005. For the reasons set forth below, the Court recommends that Plaintiff's motion be denied.

### Standard of Review

A district court may grant a plaintiff's request for a preliminary injunction if the plaintiff satisfies a four-part

test: (1) the plaintiff is likely to succeed on the merits of the

action; (2)  the plaintiff will suffer irreparable harm if the

injunction is not granted; (3) the injury to the plaintiff

outweighs any harm which granting the injunction would inflict on

the defendant; and (4) the public interest will not be adversely

affected by the granting of the injunction.  See Langlois v.

Abington Hous. Auth., 207 F.3d 43, 47 (1st Cir. 2000); Public

Serv. Co. v. Patch, 167 F.3d 15, 25 (1st Cir. 1998).  A party

seeking injunctive relief must independently satisfy each of the

four factors.  See Auburn News Co. v. Providence Journal Co., 659

F.2d 273, 277 (1st Cir. 1981).

## Background

New Hampshire Department of Corrections Policy and Procedure

Directive ("PPD") 7.20, IV(A)(2)(f) provides in pertinent part

that:

1.   CCU inmates will do legal research using the two
     law computers located in their unit.  They have a
     small collection of legal books in their library
     to help in writing and research.

2.   If individuals need to do more research using the
     books that remain in the library proper they will
     submit a library request form (Attachment 7).
     Their request will be reviewed to confirm that the
     stated materials are available in the library.
     The request will then be returned to CCU so that
     the supervising personnel may authorize their

> movement to the library on Wednesday afternoon
> from 1500 to 1600 hours.  There will be a maximum
> of four (4) inmates allowed during that time so
> that those inmates may receive the undivided
> attention of the law library staff.

Def.'s Ex. A.  Plaintiff alleges that the library policies that

apply to CCU inmates unlawfully hinder his efforts to purse his

claims in an open state court case.[1]  He challenges the

requirement that CCU inmates rely primarily on the CCU library

for legal research, and the allotment of only one hour per week

for CCU inmates to have physical access to the main library.

Plaintiff further asserts that the prison should be required to

provide a law clerk for the CCU library.  The evidence pertaining

to Plaintiff's allegations are discussed below.

I.   CCU Library

     There is no dispute that the CCU library has only a small

collection of written legal materials in addition to two

computers that are available for inmates to conduct legal

---

[1]Plaintiff references his petition for a writ of habeas
corpus in this district court.  See Civil No. 04-cv-258-JD
(document no. 2).  This Court found after preliminarily reviewing
the petition that Plaintiff had not demonstrated that he had
exhausted his state court remedies before filing his petition.
At Plaintiff's request, the Court entered an order staying the
federal habeas proceedings while the Plaintiff returned to state
court to exhaust his remedies.  Id. (document no. 4).  Plaintiff
does not specify the claims that he is now pursuing in state
court in his motion for injunctive relief.

research.  According to Plaintiff, the CCU library has the following written materials: (1) Annual Review of Criminal Procedure 2003; (2) Prisoners Litigation Manual; (3) Black's Law Dictionary; (4) United States District Court Local Rules; (5) Department of Safety Hearing Rules; (6) United States District Court Pro Se Litigation Guide; (7) Judges Handbook Sentencing Alternatives; (8) Judges Handbook -- Supplement; (9) Parole Book; (10) New Hampshire Department of Corrections Handbook 1999; and (11) a copy of the Laaman Decree.  See Pl.'s Ex. D.  Defendant did not dispute the accuracy of Plaintiff's list except to add that a copy of Gilbert's citations, which Plaintiff alleged the CCU library needed, has been provided.

    Ms. Rebecca Harding, NHSP media generalist, testified that the CCU library computers provide inmates access to a wide range of legal materials available on Loislaw.[2]  Ms. Harding testified that CD-ROMS are available in the CCU library that enable inmates to access cases decided by the United States Supreme Court, cases decided by all thirteen federal judicial circuits, and all cases, rules and regulations from the states of New Hampshire, Vermont,

_____

    [2]Loislaw is a legal database accessible on a computer either through the internet or with CD-ROMs that enables the user to search for specified data.

Maine and Massachusetts.  The information stored on the CD-ROMs

in the CCU library is current through June 2004.  CCU inmates can

obtain more current material at the main library, and can request

that Harding forward copies of materials.

Inmates are required to submit a request slip asking to use

the CCU library before access is granted.  The prison does not

specify any particular "library time" for the CCU library,

although Plaintiff asserts that inmates are not permitted to use

the library at night.  Sgt. James Roy, a corrections official

assigned to CCU, testified that he allows CCU inmates to stay in

the CCU library as long as they need to be there.  In some

instances inmates have stayed as short as ten minutes; at other

times inmates have been allowed to stay in the library for as

long as three hours.  Sgt. Roy further testified, contrary to

Plaintiff's suggestion, that inmates who are using the CCU

library for legal research are not required to leave the room

when a class is being held there.

Sgt. Roy testified that Plaintiff has only submitted one

request slip to use the CCU library since he returned to CCU from

the Special Housing Unit approximately four weeks ago.  Sgt. Roy

further testified that Plaintiff has used the computers in the

CCU library in the past.  Plaintiff does not allege that he is

incapable of accessing information on the CCU computers.

II.  CCU Inmate Access to the Main Library

Plaintiff alleges that there is no orderly basis for

determining which CCU inmates are permitted to go to the main

library on any given week, and that, in any event, the amount of

time that is provided is too small to allow for meaningful

research.  Plaintiff argues that he should be granted the same

access to the main library as general population inmates.

Defendant responds that the one hour of time per week that

Plaintiff is permitted physical access to the main library,

combined with his access to all of the main library's materials

through request slips to the librarian, is sufficient to allow

Plaintiff meaningful access to all of the library's resources.[3]

Sgt. Roy testified that Plaintiff need only submit a request

slip in advance to be allowed to go the main library.  Although

there are some CCU inmates who go to the main library on a

regular basis, not every slot is filled every week.  Ms. Harding

testified that more often than not fewer than four CCU inmates go

---

[3]While Ms. Harding testified there are no available time
slots on the library's schedule that could be allocated to
provide additional time to CCU inmates, Defendant does not rely
on this fact as a reason for denying Plaintiff additional access.

to the main library each week.  And while PPD 7.20,

IV(A)(2)(f)(2), specifies that only four CCU inmates may go to

the main library at one time, Ms. Harding and Sgt. Roy concurred

that there have been occasions when more than four CCU inmates

have been allowed to go to the main library at one visit.  Sgt.

Roy testified that if a particular inmate requests to go to the

library but does not make the list for that week, then that

inmate would be allowed to go to the library the following week.

III. Lack of a CCU Library Law Clerk

Plaintiff complains that the CCU library, unlike the main

library and the Special Housing Unit library, does not have any

inmate law clerks.  Ms. Harding testified that whether a law

clerk is employed in the CCU library is a decision that the

prison officials who run CCU would need to make.  Plaintiff did

not indicate whether he has ever specifically requested that the

prison provide a law clerk for CCU.

## Discussion

I.    Likelihood of Success on the Merits

It is well-settled that inmates have a constitutionally

protected right of meaningful access to the courts.  See Bounds

v. Smith, 430 U.S. 817, 828 (1977); Wolff v. McDonnell, 418 U.S.

539, 556 (1974); <u>Boivin v. Black</u>, 225 F.3d 36, 42 (1st Cir.

2000).  This right, however, only "'requires prison authorities

to assist inmates in the preparation and filing of meaningful

legal papers by providing prisoners with adequate law libraries

or adequate assistance from persons trained in the law." <u>Carter</u>

<u>v. Fair</u>, 786 F.2d 433, 435 (1st Cir. 1986) (quoting <u>Bounds</u>, 430

U.S. t 828)).

To establish a claim based on denial of access to the court,

a plaintiff must allege that he suffered an actual injury as a

result of the defendant's actions.  <u>See</u> <u>Lewis v. Casey</u>, 518 U.S.

343, 351-52 (1996).  An inmate cannot establish relevant actual

injury simply by alleging that "his prison's law library or legal

assistance program is subpar in some theoretical sense." <u>Id.</u> at

351.  He must demonstrate that the alleged shortcomings in the

law library or legal assistance program "hindered his efforts to

pursue a legal claim." <u>Id.</u>; <u>see also</u> <u>Christopher v. Harbury</u>, 536

U.S. 403, 415 (2002) (the right of access to the courts "is

ancillary to the underlying claim, without which a plaintiff

cannot have suffered injury by being shut out of court.").

> [A prisoner] might show, for example, that a complaint
> he prepared was dismissed for failure to satisfy some
> technical requirement which, because of deficiencies in
> the prison's legal assistance facilities, he could not

8

> have known.  Or that he had suffered arguably
> actionable harm that he wished to bring before the
> courts, but was so stymied by inadequacies of the law
> library that he was unable even to file a complaint.

Lewis, 518 U.S. at 351.

The right of access to the courts is not unlimited.  A prison regulation or practice may interfere with a fundamental constitutional right if it bears a rational relation to legitimate penological interests.  See Overton v. Bazzetta, 539 U.S. 126, 132 (2003); Turner v. Safley, 482 U.S. 78, 89 (1987). Thus, even if a plaintiff is able to establish that the challenged library policies actually impede his right to access the courts, he is not entitled to relief if the policies satisfy this requirement.

In this case, Plaintiff argues that he is being denied adequate access to the courts because the CCU library does not have the same access to legal materials, particularly law books, as the main prison library.  Plaintiff argues that he is unable to adequately present his claims to the state court because of the CCU library's deficiencies and his extremely limited access to the main library.  Plaintiff requests that the court order the Defendant to provide him access to the main prison library at least 15 hours per week.  He further requests that the NHSP be

ordered to hire a law clerk for the CCU library.

Defendant argues that the Plaintiff cannot demonstrate a
likelihood of success on the merits of his claim because he has
not alleged sufficient facts to establish that the policies of
which he complains has resulted in actual injury.  Defendant
further argues that the evidence demonstrates that CCU inmates
are provided meaningful to legal materials, and that the policy
limiting CCU inmates to one-hour visits once a week to the main
library is related to a valid penological interest.  The Court
agrees with each of the Defendant's arguments.

The Court finds that Plaintiff has not identified any
specific claim that has been thwarted based on his claim of lack
of meaningful access to legal materials.  While Plaintiff alleges
that he needs to exhaust his state court remedies, he has not
identified any claim that he has been unable to adequately
present to the court because of his lack of access to legal
materials.  Plaintiff's failure to demonstrate the existence of
an actual injury is sufficient by itself to warrant a denial of
his motion for injunctive relief.

The Court further finds that Plaintiff is being provided
meaningful access to resources that would enable him to

adequately present his claims to the state court.  The evidence

demonstrates that Plaintiff is provided access to a small

collection of guides and a wide-range of legal authorities on

Loislaw in the CCU library.  The only book that Plaintiff

specifically identified at the hearing as absent from the CCU

library, a copy of Gilbert's, was provided to the CCU unit prior

to the hearing.  The evidence further showed that Plaintiff has

access to the materials in the main library for one hour each

week as long as he submits a timely request, and that he has the

ability to obtain copies of materials from the main library

through request slips.

    Plaintiff's underlying concern appears to be that he would

prefer greater access to hardbound volumes rather than be limited

to materials in electronic format on a computer.  The Court

notes, however, that Plaintiff has not alleged that he is

incapable of accessing information on the computers provided in

the CCU library.  Moreover, Plaintiff's allegation that he could

not conduct research on the CCU library computers while classes

were being held in the library was contradicted by Sgt. Roy.  The

Court appreciates that the CCU library may not provide the

optimal solution for Plaintiff.  "However, the Prison need not

provide its inmates with a library that results in the best possible access to the courts."  Lindquist v. Idaho State Bd. of Corr., 776 F.2d 851, 856 (9th Cir. 1985).  It need only provide sufficient resources to meet minimum constitutional standards. Id.  Based on the evidence presented, the resources available to the Plaintiff appear to be adequate to enable Plaintiff to present his claims to the state court.

     With regard to Plaintiff's request for an inmate law clerk in the CCU library, the Court notes that under the Supreme Court's "right-of-access precedents, inmates have a right to receive legal advice from other inmates only when it is a necessary means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  Shaw v. Murphy, 532 U.S. 223, 231 n.3 (2001) (quotations and citations omitted).  The evidence demonstrates that the prison provides CCU inmates adequate access to legal materials to enable those inmates to exercise their right of access to the courts.  An injunction ordering the Defendant to provide a law clerk for the CCU library is not warranted.

     Yet another reason for denying Plaintiff's request for injunctive relief is the Defendant's argument that limiting CCU

inmates to one-hour visits once a week to the main library is
related to a valid penological interest.  "[W]hen a prison
regulation impinges on inmates' constitutional rights, the
regulation is valid if it is reasonably related to penological
interests."  Turner, 482 U.S. at 89.

There is no dispute that CCU inmates are subjected to a
higher level of custody, and greater restrictions, than inmates
in the general population for security reasons.  Defendant
asserts that limiting CCU inmates' access to the main library is
necessary to maintain order.  The Supreme Court has held that if
a prison's regulations are reasonably related to legitimate
penological interests, delays that Plaintiff may experience in
obtaining legal materials is without constitutional significance,
even if the restriction results in an actual injury.  See Lewis,
518 U.S. at 362.  The Plaintiff's failure to rebut the
Defendant's argument that a reasonable penological interest
exists for limiting CCU inmates' access to the main library
fatally undermines his right of access claim.  See Overton, 539
U.S. at 132 (finding that the burden is on the prisoner to
disprove the validity of prison regulations).

II.   Other Preliminary Injunction Factors

The Court finds that a preliminary injunction is not
warranted on this record because the Plaintiff has demonstrated
that he is likely to succeed on the merits.  Since a party
seeking a preliminary injunction must independently satisfy each
preliminary injunction factor, the Court does not address the
remaining factors.  See Auburn News, 659 F.2d at 277.

Conclusion

For the reasons set forth above, the Court recommends that
the Plaintiff's motion for an injunction and damages (document
no. 5) be denied.

Any objections to this Report and Recommendation must be
filed within ten (10) days of receipt of this notice.  Failure to
file objections within the specified time waives the right to
appeal the district court's order.  See Unauthorized Practice of
Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United
States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

                                   _____
                                   James R. Muirhead
                                   United States Magistrate Judge

Date: May 11, 2005

14

cc:   Randolph L. Chambers, <u>pro</u> <u>se</u>
      Laura E. B. Lombardi, Esq.